DANIEL R. SULLIVAN (State Bar No. 96740)
drs@sullivanballog.com
MICHAEL S. VASIN (State Bar No. 227945)
msv@sullivanballog.com
ANTHONY V. MARTINEZ (State Bar No. 286477)
avm@sullivanballog.com
**SULLIVAN, BALLOG & WILLIAMS, LLP**
400 North Tustin Avenue, Suite 120
Santa Ana, California 92705
Telephone: (714) 541-2121
Facsimile: (714) 541-2120

Attorneys for Defendants
ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a corporation sole, for and on behalf of Transfiguration School (erroneously sued and served as Archdiocese of Los Angeles and Transfiguration School)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| KOURTNEY LIGGINS,<br><br>Plaintiff,<br><br>v.<br><br>ARCHDIOCESE OF LOS ANGELES, TRANSFIGURATION SCHOOL, and DOES 1 to 100, inclusive<br><br>Defendants. | Case No. 2:14-cv-08983-MMM-JEM<br><br>The Honorable Margaret M. Morrow<br>Courtroom: 780<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**<br><br>[*Filed Concurrently with Declaration of Anthony V. Martinez*]<br><br>Date: March 23, 2015<br>Time: 10:00 a.m.<br><br>Complaint Filed: November 20, 2014 |

**TO PLAINTIFF AND HER ATTORNEY OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on March 23, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 21 of the above-entitled Court, Defendants, ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a

1 corporation sole, for and on behalf of Transfiguration School (erroneously sued and served as Archdiocese of Los Angeles and Transfiguration School), (hereinafter referred to as "Defendant"), will and hereby does move the Court for an order dismissing Plaintiff KOURTNEY LIGGINS' (hereinafter referred to as "Plaintiff") Complaint for Damages. This Motion is based on the grounds that Plaintiff has failed to state a claim upon which relief may be granted, has failed to exhaust administrative remedies, and has failed to comply with Federal Rule of Civil Procedure 8. Should the Court not find dismissal of Plaintiff's Complaint appropriate at this time, in the alternative, the Defendant requests the Court stay the proceedings until judgment is entered in the nearly identical State Court Action.

    This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the request for judicial notice concurrently filed with this notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the court at the time of the hearing. This motion is brought following the conference of counsel pursuant to Local Rule 7-3, which took place on and around December 18, 2014. Via electronic communications, an outline of are arguments that are the substance of this motion were sent to Plaintiff's counsel. No agreement could be reached which would alleviate the need for presenting this motion to the Court.

DATED: February 6, 2015        SULLIVAN, BALLOG & WILLIAMS, LLP


By:   /s/ Anthony V. Martinez
    DANIEL R. SULLIVAN
    MICHAEL S. VASIN
    ANTHONY V. MARTINEZ
    Attorneys for Defendants, ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a corporation sole, for and on behalf of Transfiguration School (erroneously sued and served as Archdiocese of Los Angeles and Transfiguration School),

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case arises out of Plaintiff, Kourtney Liggins' employment as a teacher at Transfiguration School, a Catholic primary school which is operated on behalf of the Roman Catholic Archbishop of Los Angeles (hereinafter the "Archbishop."). Plaintiff alleges that she was discriminated against, harassed, and ultimately terminated (Plaintiff's contract was not renewed at the conclusion of the 2012-2013 school year), due to various protected characteristics such as her age, gender, disability, and pregnancy, as well as the fact that she took an extended medical leave.

Plaintiff originally filed a Complaint in State Court on September 27, 2013, alleging causes of action under FEHA for discrimination and harassment on the basis of age, gender, pregnancy and disability, along with several state law causes of action. Defendants filed a demurrer which the Court sustained so Plaintiff then filed a First Amended Complaint ("FAC"). Following the sustainment of Defendants demurrer to several causes of action in Plaintiff's FAC on October 3, 2014, Defendant filed an answer to the remaining causes of action in the FAC on October 23, 2014. Plaintiff proceeded to file a near identical version of that FAC in this Court on November 20, 2014.

Defendant's Motion to Dismiss must be granted based on the ministerial exception which shields religious entities and their actors from liability based on Constitutional grounds (Free Exercise of Religion and Establishment Clauses). Plaintiff's claims of discrimination and wrongful termination are expressly precluded by this exception.

Moreover, Plaintiff has failed to plead facts showing she exhausted required administrative remedies prior to filing suit in this case, and on those grounds the Motion must also be granted.

///

///

## II. <u>LEGAL STANDARD</u>

The function of a Rule 12(b)(6) motion is to test the legal sufficiency of plaintiff's claim as set forth in its Complaint. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Cahill*, 80 F.3d at 338. Consequently, a Rule 12(b)(6) dismissal is proper when there is either a "lack of cognizable legal theory" or an "[absence] of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F2d 696, 699 (9th Cir. 1990).

In making a determination with respect to a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to plaintiff; accept all well pled factual allegations as true; and determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337, 338 (9th Cir. 1996). However, this does not require the court "to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). A complaint that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is justified when a cause of action contained within the complaint is improper as a matter of law. *See U.S. v. Stanley*, 483 U.S. 669, 692 n.7 (1987) (explaining "if the plaintiff fails either to plead a cause of action or to demonstrate that damages are appropriate as a matter of law, the complaint is dismissed under Federal Rule of Civil Procedure 12(b)(6)."); *see also SmileCare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th Cir. 1996) (noting that "[t]he court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.").

///

## III. ARGUMENT

### A. The Motion to Dismiss Should be Granted Based on the Ministerial Exception Which Precludes Plaintiff from Making Claims Based on Discrimination or Wrongful Termination

The ministerial exception protects religious organizations from the normally attendant adverse consequences of employment discrimination and is "constitutionally compelled," arising out of the establishment and free exercise clause of the First Amendment. *Bollard v. California Province of the Society of Jesus*, 196 F.3d 940, 948–949 (9th Cir. 1999); See also *EEOC v. Catholic Univ. of Am.*, 317 U.S. App. D.C. 343 (D.C. Cir. 1996.) As the Court in *Bollard* explained, "the ministerial exception to Title VII precludes civil courts from adjudicating employment discrimination suits by ministers against the church or religious institution employing them."

In *Henry v. Red Hill Evangelical Lutheran Church of Tustin* (2011) 201 Cal.App.4th 1041, that court explained, "The ministerial exception doctrine is based on the notion a church's appointment of its clergy, along with such closely related issues as clerical salaries, assignments, working conditions and termination of employment, is an inherently religious function because clergy are such an integral part of a church's functioning as a religious institution." (*Id.* citing *Roman Catholic Archbishop of Los Angeles v. Superior Court* (2005) 131 Cal.App.4th 417, 433).) Therefore, "secular courts will not attempt to right wrongs related to the hiring, firing, discipline or administration of clergy." (*Id.*, citing *Higgins v. Maher* (1989) 210 Cal.App.3d 1168, 1175 [holding "Implicit in this statement of the rule is the acknowledgment that such wrongs may exist, that they may be severe, and that the administration of the church itself may be inadequate to provide a remedy. The preservation of the free exercise of religion is deemed so important a principle as to overshadow the inequities which may result from its liberal application. In our society, jealous as it is of separation of church and state, one who enters the clergy forfeits the

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

protection of the civil authorities in terms of job rights."].)

The ministerial exception is not limited to churches and extends to church-related institutions including church-affiliated schools. (*Henry, supra*, at 201 Cal.App.4th at 1054, citing *Schmoll v. Chapman University* (1999) 70 Cal.App.4th 1434, 1436.) The exemption is similarly not limited to members of the clergy and "***encompasses all employees of a religious institution***, whether ordained or not, whose primary functions serve its spiritual and pastoral mission." (*Id.*, citing *E.E.O.C. v. Catholic University of America* (D.C. Cir. 1996) 83 F.3d 455, 461.) (Emphasis added.)

Importantly, the *Henry* court held the ministerial exception even encompassed early education teachers such as religious preschool and kindergarten teachers not only because they fulfill the purpose of a minister by teaching religion and spreading faith, but because they are essentially responsible for introducing a child to religion by providing a "groundwork upon which the whole religious doctrine may later be built." (*Id.* at 1054-55.)

Plaintiff admits, and it is undisputed, that she was not only a teacher at the School, whose mission is to teach students about God and morality, but also that she acted as both a *youth minister* and *Confirmation teacher* during her tenure at the School. (Plaintiff's Complaint ¶10.) In a disingenuous attempt to avoid the ministerial exception, Plaintiff states that her "duties were purely secular." (*Id.*) She goes on further to state that her duties as a confirmation advisor and youth minister "did not involve any religious teachings and discussions, or involve bible studies or prayer. Her duties in these positions were purely secular..." (*Id.*) The assertion that as a teacher, confirmation advisor, and youth minister at a Catholic elementary school, Plaintiff's duties did not involve religion and were "secular" is nonsensical and self-defeating.

Plaintiff further claims that Father Tang told her she that her pregnancy would morally corrupt impressionable teenagers. (Complaint ¶12.) Plaintiff also alleges that

Ms. Rickenbacker was concerned about immorality in the classroom due to Plaintiff's pregnancy. (Complaint ¶20.) These alleged concerns on the part of Father Tang and Ms. Rickenbacker, which Plaintiff claims were the source of her discrimination, harassment, and ultimate termination, are precisely the type of decision making functions on the part of religious institutions and their actors that the Courts have consistently refused to interfere with based on well-established constitutional precepts.

Plaintiff repeatedly alleges in the Complaint that she was harassed, discriminated against, and terminated based in large part because she was pregnant and unwed. Plaintiff's alleges she was given a packet of complaints from parents concerning her pregnancy (Complaint ¶ 22), that she was harassed and discriminated against for being "pregnant and unmarried" (Complaint ¶ 84), that she was terminated because of her pregnancy (Complaint ¶¶ 35, 67). Even assuming her status as unwed and pregnant was cause for terminating her, Plaintiff's very own allegations in this regard directly implicate the ministerial exception and preclude each and every one of her claims based on employment discrimination, harassment, and wrongful termination.

Based on the foregoing, Defendant's Motion to Dismiss should be granted.

### B. Plaintiff Failed to Plead Facts Showing She Timely Filed a Charge with the EEOC, and Thus Has Not Properly Exhausted Her Administrative Remedies

A Plaintiff's failure to exhaust nonjudicial remedies is treated as a matter in abatement and is subject to an unenumerated Rule 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *Ritza v. International Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d 1108, 1119-20.

First and foremost, it goes without saying that Plaintiff simply cannot maintain

7
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

a claim in this Court in relation to any of her nine causes of action, all of which are based on either Title VII, the ADA, or the ADEA, because she did not exhaust her administrative remedies in a timely manner. In fact, Plaintiff does not plead a single fact in her Complaint indicating she pursued any administrative remedies, much less filed the prerequisite, timely charge with the Equal Employment Opportunity Commission (EEOC) as required.

Under Title VII, the ADA, and the ADEA, a complainant is required to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) prior to filing suit in federal court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Indeed, exhaustion of administrative remedies is considered a "condition precedent to suit." *Stache v. International Union of Bricklayers and Allied Craftsmen, AFL-CIO*, 852 F.2d 1231, 1233 (9th Cir. 1988); See also *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) ("Although filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'")

Here, Plaintiff has utterly failed to establish that she filed an EEOC charge prior to filing the present suit. Not one fact is alleged in the complaint that she filed such a charge or received the requisite Notice of Right to Sue or that she timely filed her complaint within the 90-day period after receiving such a notice. "Employment discrimination plaintiff must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books a Million, Inc., supra*, at 379. Devoid of any sort of facts demonstrating exhaustion of administrative remedies, Plaintiff's complaint does not contain the necessary condition precedents, the timely EEOC charge and Notice of Right to Sue, and is consequently subject to dismissal.

Having pled no facts demonstrating exhaustion of administrative remedies, this Court must dismiss Plaintiff's Title VII claims for failure to comply with this statutory pre-requisite.

### C. Should the Court Find this Action not Appropriate for Dismissal at this time, Defendant asks the Court to Stay the Action Pending the Outcome of the State Court Case

As previously stated, Plaintiff initiated a nearly identical action in State Court, based on identical facts, with the same parties, on September 27, 2013. After having Defendants' demurrer sustained in its entirety, Plaintiff filed a First Amended Complaint ("FAC") on or about May 23, 2014 to which Defendants also demurred. (See Exhibit A.) On October 3, 2014, the State Court sustained Defendant's demurrer as to several causes of action without leave to amend. Subsequent to having several causes of action removed from her complaint, Plaintiff then proceeded to file this effectively identical action in the present court. Indeed, the first 36 paragraphs of her Complaint where Plaintiff alleges the majority of her facts repeats *verbatim* the first 36 paragraphs of her First Amended Complaint in Superior Court. Plaintiff merely substitutes her causes of action under the Fair Employment and Housing Act (FEHA) for those under Title VII, the ADA and the ADEA.

When a plaintiff files in one court first, the court that first obtains jurisdiction retains it until the matter has been decided:

> The rule that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it until the controversy is determined, to the entire exclusion of the other, and will maintain and protect its jurisdiction by an appropriate injunction, is confined in its operations where both suits are substantially the same, that is to say, where there is substantial identity in the interests represented, in the rights asserted and in the purposes sought.

*Pacific Live Stock v. Lewis,* 241 U.S. 440, 447 (1916), citing *Watson v. Jones,* 80 U.S. 679 (1872).

The court in which the second action is brought may in its discretion stay or suspend that suit, awaiting decision in the first one, or, influenced by a spirit of comity, may refuse to entertain it, if the same relief can be awarded in the prior suit. *Simmons v. Superior Court of Los Angeles County,* 96 Cal.App.2d 119, 123 (1950).

When an action is brought in two separate courts, involving the same parties

and the same subject matter, a stay is within the sound discretion of the trial court. "In exercising its discretion, the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of **avoiding unseemly conflicts with the courts of other jurisdiction**. It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or **the stage to which the proceedings in the other court have already advanced**." *Farmland Irrigation Co. v. Dopplmaier*, 48 Cal.2d 208, 225 (1957) (Emphasis Added.) See also *Thomson v. Continental Ins. Co.* 66 Cal.2d 738, 746-747 (1967).

Plaintiff could have easily had her nearly identical federal claims heard within the state court proceedings. State courts generally have concurrent jurisdiction to determine rights and obligations arising under a federal statute. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-478 (1981). However, in complete disregard for judicial economy and comity, and unhappy with the trajectory of her state court proceedings, Plaintiff attempts to take a second bite at the proverbial apple by now filing duplicate litigation in Federal Court.

Further, the Court should take into consideration the stage at which the state court proceedings have already reached. Not only has there been two demurrers and an answer filed in the State Court proceedings, but voluminous amounts of written discovery has been conducted for the past fourteen months, in addition to conducting depositions. To restart litigation in a different venue on the exact same facts, with the exact same parties, under effectively identical claims is not only meant to burden and harass Defendants into defending a second, completely unnecessary mirrored action, but also ignores the extent and stage of State Court proceedings, as well as the potential for conflicting rulings between the two courts.

Taking into consideration the action has proceeded in state court since September 2013, the potential for conflicting rulings, and the interest of judicial economy and comity, Defendants respectfully request in alternative to dismissal, that

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS

the Court stay the federal proceedings until the Plaintiffs near identical suit in state court has reached a final judgment.

### IX. CONCLUSION

Based on the foregoing, Defendants respectfully requests that this Court grant the Motion to Dismiss, or in the alternative, stay these federal proceedings until judgment is reached in state court.

DATED: February 6, 2015        SULLIVAN, BALLOG & WILLIAMS, LLP

By: /s/ Anthony V. Martinez
DANIEL R. SULLIVAN
MICHAEL S. VASIN
ANTHONY V. MARTINEZ
Attorneys for Defendants,
ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a corporation sole, for and on behalf of Transfiguration School